## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

**BRIAN SCOTT BERRYMAN**                                                    **PETITIONER**

**V.**                                              **CAUSE NO. 1:22-CV-00140-SA-RP**

**BURL CAIN and**
**MISSISSIPPI DEPARTMENT OF CORRECTIONS**                 **RESPONDENTS**

### MEMORANDUM OPINON AND ORDER

Petitioner Brian Scott Berryman has filed a *pro se* habeas petition pursuant to 28 U.S.C. §

2254 challenging his State-court conviction and sentence for being a felon in possession of a

firearm. Having considered the submissions of the parties, the State-court record, and the law

applicable to Petitioner's claims, the Court finds that the petition should be denied, for the

reasons that follow.

### Factual Background[1]

The Mississippi Court of Appeals accurately summarized the underlying facts of the case

as follows:

> In the early morning hours of February 6, 2017, David Thacker called 911 and reported
> that his neighbor, Berryman, had come inside his trailer and fired a gun into his bedroom.
> Deputy Scott Dalton from Tishomingo County Sheriff's Office responded to the trailer on
> County Road 344 in the Goat Island area in the northern part of Tishomingo County.
> Dalton took statements from Thacker and Thacker's girlfriend, Tina Alexander. Thacker
> and Alexander both identified Berryman as the shooter. Dalton then entered the trailer
> and recovered eight spent shell casings from a .22[-] caliber gun, one live round for a .22-
> caliber gun, and a pink dog leash that did not belong to Thacker or Alexander. Dalton
> also observed bullet holes in the bedroom door and in the wall inside the bedroom.
>
> Dalton and two other deputies then proceeded to Berryman's house, which was two
> houses away. Two large dogs were chained up outside the home, and the deputies
> ordered Berryman to come out and put up the dogs. Berryman was bruised and bloodied,
> and he claimed that Thacker had "beat him up." Berryman then told the deputies that he
> did not have any guns in his house but that they were "free to check." The deputies

---

[1] This section is a general factual account of the actions underlying Berryman's conviction. Additional facts may be
set forth, as necessary, in subsequent sections of discussion.

entered the house and found a .380-caliber pistol behind a speaker in the living room and a .22-caliber rifle in the laundry room behind the washer and dryer. The deputies also found a box of .22-ammunition in the bedroom and a box containing both .22-caliber and .380-caliber ammunition in the laundry room. The deputies also found hydrocodone and oxycodone inside the house.

*Berryman v. State*, 337 So.3d 1116, 1121 (Miss. Ct. App. 2021).

## Procedural Posture[2]

Petitioner Brian Scott Berryman is currently in the custody of the Mississippi Department of Corrections and housed at the South Mississippi Correctional Institution located in Leakesville, Mississippi. Doc. # 1. A Grand Jury in the Tishomingo Circuit Court originally indicted Berryman on two counts: (1) shooting into a dwelling and (2) felon-in-possession of a firearm. Doc. # 23-8, pp. 9-11. The trial court, however, eventually dismissed Count One, shooting into a dwelling, finding that Berryman's right to a speedy trial had been violated because Berryman had shown actual prejudice as to that charge only. Doc. # 23-3, pp. 105-110.

On June 24, 2020, following a jury trial in the Circuit Court of Tishomingo County, Mississippi, Berryman was convicted on the remaining Count Two of the indictment, felon in possession of a firearm. Doc. # 23-7, p. 57. The trial court subsequently entered an order in which it found Berryman a "habitual offender" within the meaning of Mississippi Code Annotated § 99-19-83, and consequently, sentenced Berryman to a term of life without the possibility of parole. Doc. # 23-3, pp. 103-104.

Through counsel, Berryman filed a direct appeal challenging his conviction and sentence, raising the following two issues:

1. Count II of the indictment should have been dismissed because Berryman was denied his constitutional and statutory right to a speedy trial.

---

[2] This section too is limited in scope, and the Court will elaborate as to the trial proceedings in addressing Berryman's claims.

    2. The trial court erred in sentencing Berryman to life without parole under §99-19-83, as the indictment stated that it was seeking to have Berryman sentenced to the maximum sentence, not to life without parole.

Doc. # 23-12, pp. 1-22. The Mississippi Court of Appeals affirmed Berryman's conviction and sentence on November 9, 2021. *Berryman*, 337 So.3d 1116 (Miss. Ct. App. 2021); *see also* Doc. # 22-2. The Court of Appeals addressed both issues and found them to be without merit. *See id.* Berryman's motions for rehearing (filed both by counsel and *pro se*) were denied on February 15, 2022. Doc. # 23-10, p. 9. The Mississippi Supreme Court denied Berryman's petitions for certiorari review (filed both by counsel and *pro se*) on May 19, 2022. Doc. #s 22-3, 23-11, pp. 5-6.

    On August 31, 2022, Berryman, proceeding *pro se*, filed an "Application for Leave to Proceed in the Trial Court", along with his "Motion for Post-Conviction Collateral Relief" in the Mississippi Supreme Court. Doc. # 23-13, p. 13-31. In his motion, Berryman presented the following arguments, as summarized by the Court:

    (1) The trial court erred in failing to dismiss Count II of the Indictment after finding that Berryman's right to speedy trial had been violated as to Count I.

    (2) The indictment was invalid because it failed to adequately put Berryman on notice that the prosecution was seeking a term of life without parole under §99-19-83.

    (3) Berryman's trial counsel was ineffective.

Doc. # 23-13, pp. 14-30. On October 11, 2022, the Mississippi Supreme Court denied Berryman's application, finding, in pertinent part, as follows:

    In his application, Berryman claims that he is entitled for post-conviction collateral relief based upon: (1) the denial of his constitutional and statutory right to a speedy trial; (2) an "invalid/faulty" indictment; and (3) the alleged delay in appointment, and the ineffective assistance, of trial counsel. After due consideration, the panel finds that (1) and (2) are barred by res judicata. Regarding (3), the panel finds that Berryman's claim lacks an arguable basis and/or fails to make the requisite showing of deficient performance and prejudice provided in *Strickland v. Washington* ….

Doc # 22-4.  The Mississippi Supreme Court denied Berryman's motion for rehearing, or motion for reconsideration, on November 1, 2022.  Doc. # 22-5.

Berryman filed the instant *pro se* petition for federal habeas corpus relief on September 28, 2022.  Doc. # 1.[3]  In his petition, Berryman asserts the following grounds for relief, as summarized by the Court:

> Grounds One and Three: The trial court's finding of a speedy trial violation required dismissal of both Counts I (shooting into a dwelling) and II (felon in possession of a firearm) of the indictment.
>
> Ground Two: The indictment was invalid or faulty because it failed to put Berryman on notice that the State was seeking a sentence of life without parole.
>
> Ground Four: Berryman was denied effective assistance of trial counsel.

Doc. # 1.  On March 6, 2023, Respondents filed their response to Berryman's petition, arguing that the petition should be denied.  Doc. # 22.  Berryman filed his reply on March 15, 2023.  Doc. # 24.  The matter is now ripe for resolution.

### Standard of Review

The Mississippi Supreme Court's rejection of Berryman's claims limits this Court's authority to grant federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the AEDPA, a federal court cannot grant federal habeas relief on any claim that the state court adjudicated on the merits unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1) and (2);

---

[3] The petition was filed *before* the Mississippi Supreme Court ruled on Berryman's application to proceed in the trial court for post-conviction relief.  Thus, at the time, Berryman had not yet exhausted available state-court remedies. Once Berryman's state post-conviction proceedings were resolved, the Court ordered Respondents to file their response to his petition.  *See* Doc. # 18.

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Federal habeas relief may be granted under the "contrary to" clause where the state court either "applie[d] a rule that contradicts the governing law set forth in our cases" or in a case with facts "materially indistinguishable from a decision of this Court" arrived at a different conclusion." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court reiterated that "the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of the petitioner's case." 539 U.S. at 520 (quoting *Williams*, 529 U.S. at 413). Thus, "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473. As the Supreme Court has observed, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To be sure, this is a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333n.7 (1997)).

When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. Moreover, in the absence of a statement of reasons from the state court, "a [federal] habeas court must determine what arguments or theories . . . could have supported the state court's decision;

and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102. And, according to the Supreme Court, this inquiry is the "'only question that matters under § 2254(d)(1).'" *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)).

### Grounds One and Three-Speedy Trial

In Ground One, Berryman argues that the trial court erred in failing to dismiss Count II of the indictment when it dismissed Count I after finding that Berryman's right to a speedy trial had been violated. In Ground Three, Berryman cites the Due Process and Equal Protections clauses while summarily arguing that the trial court should have dismissed all counts of the indictment, and not just Count I. These two arguments, while not identical, both stem from the alleged speedy trial violation. Consequently, for purposes of efficiency, the Court finds it appropriate to address Grounds One and Three together.

*Pretrial and Trial Proceedings*

Because the dates of various delays are important to these claims, the Court will first set out the relevant factual and procedural background from the pretrial and trial proceedings:

When Berryman was arrested on February 6, 2017 for the charges underlying the conviction at issue, he was out on parole for capital murder with an outstanding arrest warrant for absconding supervision. *See* Doc. # 23-1, p. 151; *see also* Doc. # 23-5, pp. 93-94; Doc. # 23-9, p. 14. His arrest for the charges underlying the instant conviction (as well as charges from Tennessee) resulted in the Mississippi Parole Board revoking Berryman's parole and placing him back in state custody in September 2017. *See* Doc. # 23-1, p. 149; *See also id.*

In September 2017, a Grand Jury in the Circuit Court of Tishomingo County, Mississippi, indicted Berryman on two charges: (1) shooting into a dwelling, and (2) unlawful possession of a

6

firearm.  Doc. # 23-8, pp. 9-11.  Berryman filed a *pro se* "Demand for a trial; Motion to Dismiss; and Appointment of Counsel", in which he asserted speedy trial arguments, on June 16, 2018.  Doc. # 23-1, pp. 13-27.  Just shy of four months later, Berryman filed another *pro se* motion for a speedy trial.  Doc. # 23-1, pp. 45-48.  At the time Berryman filed these motions, he was in MDOC custody pursuant to his arrest for parole violations and subsequent revocation. *See Berryman*, 337 So. 3d at 1128.

Berryman was finally arraigned on November 7, 2018, and at the time the trial court appointed John White to represent him.  Doc. # 23-1, p. 54.  White, however, had been elected to the circuit court on November 6, 2018, and, consequently, was unable to represent Berryman after arraignment.  *See Berryman*, 337 So. 3d at 1122; *see also* Doc. # 23-1, p. 119.  Both White and Berryman signed the Arraignment Order, which stated that the case was "continued on the motion of the Defendant and set for trial during the next regularly scheduled term . . . ."  Doc. # 23-1, p. 54.  Two weeks after arraignment, on November 21, 2018, Berryman filed a *pro se* "Demand for Trial; Motion to Dismiss; and Appointment of Counsel."  Doc. # 23-1, pp. 64-77.

On January 7, 2019, the trial court entered an Order in which it appointed Richard Bowen as the Public Defender in Tishomingo County to represent indigent defendants in the circuit court, and further appointed Daniel Sparks as the Public Defender "to represent all conflict or overflow indigent defendants. . . ."  Doc. # 23-9, pp. 109-111.  These orders were not filed in Berryman's case, and he was not otherwise notified of the appointments, but Bowen was listed as Berryman's attorney on the dockets for the May 2019, September 2019, January 2020, and April 2020 terms.  *See* Doc. # 23-9, pp. 50, 67, 79, 93.  Bowen, however, realized he could not represent Berryman because he had previously prosecuted him for capital murder, and asked

Sparks to take over Berryman's representation.  *See Berryman*, 337 So.3d at 1122; *see also* Doc. # 23-9, p.119 .

Berryman filed a *pro se* "Assertion of Constitutional and Statutory Speedy Trial Rights" on April 18, 2019.  Doc. # 23-1, pp. 96-99.  Two months later, on June 21, 2019, the trial court entered an "Order Continuing Cause" in which it stated that it was sustaining the *defendant's* motion to continue the case, and Berryman's appointed counsel Daniel Sparks signed the order. Doc. # 23-1, p. 104.  According to Berryman, he met Sparks "for the first and only time" in September 2019 when "Sparks introduced himself[,]" and they "had about a fifteen[-]minute conversation." *See Berryman*, 337 So.3d at 1123.  On October 15, 2019, Berryman filed a *pro se* "Motion for Appointment of Counsel" and a "Motion to Dismiss for Want of Prosecution", in which he argued a denial of his right to a speedy trial.  Doc. # 23-1, pp. 108-139.

Evidently, the trial judge, Judge Roberts, was unavailable due to an illness from September 2019 until April 2020.  *See Berryman*, 337 So.3d at 1129.  In fact, the January 2020 circuit term was cancelled due to Judge Roberts' illness.  *See id.*; *see also* Doc. # 23-9, p. 114. Berryman moved for recusal of Judge Funderburk on January 21, 2020, arguing a conflict of interest because he (Judge Funderburk) had prosecuted Berryman for robbery in 1983.  Doc. # 23-2, pp. 52-59; *see also Berryman*, 337 So.3d at 1129.

On March 6, 2020, Judge Funderburk signed a Recusal Order in which he recused himself from Berryman's case "[t]o avoid even the appearance of suggestion of impropriety." Doc. # 23-2, p. 140.  On March 12, 2020, MDOC suspended inmate transfers due to the COVID-19 pandemic.  Doc. # 23-9, p. 115; *see also Berryman*, 337 So.3d at 1129.  Following Funderburk's recusal, on March 16, 2020, Judge Kelly Mims entered an Order ruling on several of Berryman's *pro se* motions for appointment of counsel and appointed Daniel Sparks *nunc pro*

*tunc* to represent Berryman. Doc. # 23-2, p. 137. Judge Mims, however, noted that "Berryman had been and continued to be represented by counsel" throughout the case, and explained the sequence of events regarding counsel as set forth above. *Id.* at 136-137.

On April 24, 2020, Berryman submitted a *pro se* Petition for Writ of Mandamus in the Mississippi Supreme Court asking the state appellate court to order the trial court to rule on Berryman's *pro se* motions to dismiss. Doc. # 23-3, pp. 11-30. The Mississippi Supreme Court ordered the trial court to submit a response to Berryman's petition on or before May 8, 2020. Doc. # 23-3, p. 43. In response, on May 1, 2020, the trial court set a hearing date of June 22, 2020, on Berryman's motions and further ordered the State to respond to Berryman's motions within thirty (30) days. Doc. # 23-3, p. 44.

Subsequently, on June 11, 2020, the trial court appointed Will Bristow to represent Berryman "because Sparks had been elected to the Mississippi Senate in 2019, and the 2020 Regular Session of the Legislature continued until October 2020." *See Berryman*, 337 So.3d at 1123; *see also* Doc. # 23-3, p. 75. Soon thereafter, on June 22, 2020, Bristow filed motions to suppress both Berryman's post-arrest statements to law enforcement and firearms found during the search of Berryman's residence. Doc. # 23-3, pp. 94-95.

The trial court held a hearing on Berryman's motions for a speedy trial and to dismiss (based on alleged speedy trial violations) on June 22, 2020, during which Berryman "testified that potential defense witness Marshall Edge had died on February 22, 2018." *Berryman*, 337 So. 3d at 1124; *see also* Doc. # 23-5, p. 22. According to Berryman, Edge lived in the house between his and the Thacker/Alexander's residences, and "was sitting on his porch during part of the night in question and could have testified that Berryman did not have a gun with him when he walked back to the Thacker/Alexander" residence. *Id.*, *see also* Doc. # 23-5, p. 23. Berryman

9

averred that Nancy Brooks, another neighbor, advised him that "Edge wanted to testify in his behalf." *Id.*, *see also* Doc. # 23-5, pp. 23-24.

Following witness testimony and arguments presented by counsel, the trial court found that Berryman had established prejudice based on the death of his potential witness, Mr. Edge, as to Count One of the Indictment, shooting into a dwelling, but failed to establish actual prejudice as to the remaining charges. Doc. # 23-5, pp. 100-104; 112-113. Consequently, the trial court dismissed Count One of the Indictment but denied Berryman's motion to dismiss Count Two. *See id.*; *see also* Doc. # 23-3, pp. 105-110. The trial court further denied Berryman's motions to suppress his confession and the firearms found during the search of his residence. Doc. # 23-5, pp. 107, 110. Berryman's trial on the remaining charge(s) began the next day, June 23, 2020. *See* Doc. # 23-5, p. 119.

*Review of the State Appellate Court Proceedings-Ground One*

The Mississippi Supreme Court denied Berryman relief on the claim advanced in Ground One, denial of his right to a speedy trial, finding that it was barred by res judicata. *See* Doc. # 22-4. Berryman also submitted this issue on direct appeal to the Mississippi Court of Appeals. *See Berryman*, 337 So. 3d at 1126-1132. In an in-depth opinion, the Court of Appeals applied the *Barker* factors and found that Berryman's right to a speedy trial was not violated. *Id.*; *see Barker v. Wingo*, 407 U.S. 514 (1972).

"Because the state appellate court properly identified the *Barker* test as the framework for analyzing [Berryman's] speedy trial claim, AEDPA limits [the Court's] focus to the objective reasonableness of the result of the state court's balancing of the *Barker* factors under the facts in [Berryman's] case." *Boyer v. Vannoy*, 863 F.3d 428, 442 (5th Cir. 2017). In order to evaluate

the reasonableness of the state court's decision, this Court must conduct a limited review of the Mississippi Court of Appeals' analysis of the *Barker* factors.

The Sixth Amendment guarantees criminal defendants the right to a speedy trial. *See* U.S. Const. Amend. VI. Under *Barker*, courts look to four factors in assessing speedy-trial claims: (1) length of delay; (2) reason for delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530; *see also Boyer,* 863 F.3d at 442. The first factor—the length of the delay—serves as "triggering mechanism." *See Barker*, 407 U.S. at 530; *see also Brown v. Errington*, 2021 WL 4693206, at *6 (S.D. Miss. Jul. 29, 2021). The Court need not address the remaining factors "until there is some delay which is presumptively prejudicial." *See id.*

Length of Delay

The Fifth Circuit has held that a delay of longer than one year triggers the *Barker* analysis. *See U.S. v. Frye*, 372 F.3d 729, 737 (5th Cir. 2004). In addressing this factor, the Mississippi Court of Appeals noted that "the speedy trial clock begins running with the defendant's arrest, indictment, or information, whichever occurs first." *See Berryman*, 337 So. 3d at 1126 (internal citations and quotations omitted). Berryman was arrested on February 6, 2017, but not tried until June 23, 2020. *Id.* Thus, there was a forty-month delay between Berryman's arrest and trial. *Id.* As such, the appellate court found the delay was "presumptively prejudicial" and triggered review of the remaining *Barker* factors. *See id.*

Reason(s) for the Delay

In addressing the second *Barker* factor—the reason for the delay—the Mississippi Court of Appeals correctly acknowledged that it must determine "whether the delay is attributable to the State or the defendant." *Id.* at 1127. Under *Barker*, "different weights should be assigned to

11

different reasons" for the delay, and the relevant inquiry is "whether the government or the criminal defendant is more to blame for th[e] delay." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (citing *Barker*, 407 U.S. at 522-25).

"A deliberate and intentional delay by the prosecution for the purpose of hindering the defense or otherwise gaining a tactical advantage is weighed heavily against the state." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994). On the other hand, "[a]n unintentional and inadvertent delay . . . is weighed much less heavily." *Id.* "A more neutral reason such as negligence or overcrowded courts should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531. "Where the state advances valid reasons for the delay, or the delay is attributable to acts of the defendant, this factor is weighed in favor of the state." *Cowart*, 16 F.3d at 647 (citing *Barker*).

The Mississippi Court of Appeals discussed the relevant time periods and weighed each of those periods as follows:

(a) Arrest to Indictment (February 6, 2017 to September 2017)

This seven-month delay was described as a "reasonable investigative delay" by the trial court such that it was a "neutral delay" which should not be weighed against either Berryman or the State. *Berryman*, 337 So.3d at 1127. The state appellate court agreed with the trial court finding that it was "neutral", or at the very least, weighed "only slightly against the State." *Id.* (citations omitted).

(b) Indictment to Arraignment (September 2017 to November 7, 2018)

The trial court found this fourteen-month period weighed against the State, but not heavily because it was a negligent delay rather than an intentional one. *Id.* at 1128. The state

appellate court agreed, to an extent, with the trial court that "there [was] no evidence of bad faith or malicious intent" attributable to the State, but still weighed this period "more heavily" against the State for failing to arraign an unrepresented defendant who was already in State custody and, consequently, not difficult to locate. *Id.*

(c) Arraignment to First Trial Setting (November 7, 2018 to January 2019)

The trial court weighed this brief two-month period against Berryman and his counsel because "both signed a standard form arraignment order continuing the case to the next trial setting 'on motion of the Defendant'" to allow for additional time to investigate and request discovery. *Id.* The state appellate court disagreed, holding that the delay could not be weighed heavily against Berryman because he had been in state custody for almost two years and, further, the "fact that [he] still had not been appointed counsel or received any discovery at th[at] late date [was] the fault of the State" and *not* Berryman. *Id.* The appellate court additionally noted that the trial court already knew when it appointed White (at Berryman's arraignment) that he could not represent Berryman because he had been elected to the circuit court and, consequently, would take office prior to the next available trial setting. *Id.*

(d) January 2019 to September 2019

The state appellate court described this eight-month period of delay as "attributable to Bowen's withdrawal due to a conflict and a request for a continuance made by Sparks." *Id.* The trial court found the delay caused by Bowen's withdrawal neutral and weighed Sparks' request for a continuance against Berryman. *Id.* The appellate court, however, pointed out that Sparks moved to continue "without Berryman's consent or approval" and, consequently, declined to weigh any of this period against Berryman, instead finding it "simply neutral." *Id.* at 1128-1129.

(e)  September 2019 to January 2020

During this four-month period, Judge Roberts was ill and unavailable to preside.  *Id.* at 1129.  The trial court found the delay due to a judge's unavailability could not be counted against the State, and the appellate court agreed, deeming the delay neutral.  *Id.*

(f) January 2020 to April 2020

Because Judge Roberts was still unavailable, Judge Funderburk entered an order cancelling the January 2020 term of court.  *Id.*  Judge Funderburk subsequently recused himself from Berryman's case following Berryman's motion to recuse on the basis that Judge Funderburk had prosecuted Berryman in an unrelated case in 1983.  *Id.*  The state appellate court found that "it [did] not appear that [this] recusal caused any delay in the case" but reasoned that, even if it had, "a judge's unavailability due to illness and a judicial recusal are both neutral reasons for delay and do not count against either party."  *Id.* (citations omitted).

(g) April 2020 to June 2020

As the state appellate court explained, there were no trials held during the April 2020 term of court because MDOC's policy of not transporting prisoners due to the COVID-19 pandemic.  *Id.*  As such, it found this delay should not be weighed against either party.  *Id.* Berryman's trial on Count II, possession of a firearm, began on June 23, 2020.  *Id.*

(h) Summary of Reasons for Delay

The state appellate court concluded its analysis of this factor by summarizing as follows:

[T]he approximately seven-month delay between arrest and indictment is neutral or weighs slightly against the State; the approximately fourteen-month delay between indictment and arraignment weighs against the State; and the post-arraignment delay of approximately nineteen months—due to changes in counsel, the illness of a judge, and COVID-19—is neutral and is not weighed against either party.

*Id.*  Upon due consideration, the Court finds the Mississippi Court of Appeals'

apportionment of the various delays is in accordance with the case law and the record.

<u>Assertion of the Right</u>

The third *Barker* factor asks whether the defendant effectively asserted his right to a speedy trial. *Amos v. Thornton*, 646 F.3d 199, 207 (5th Cir. 2011). As the state appellate court correctly noted "Berryman clearly and repeatedly asserted his right to a speedy trial, beginning before he was even arraigned." *Berryman*, 337 So. 3d at 1129. The Mississippi Court of Appeals then concluded "[t]he trial judge found, and the State concedes, that this factors favors Berryman. We agree." *Id.*

<u>Prejudice to the Defendant</u>

The fourth and final *Barker* factor requires a determination of whether the defendant was prejudiced by the delay in trial. Under this factor, prejudice "should be assessed in the light of the interests of defendants which the speedy trial was designed to protect." *Barker*, 407 U.S. at 532. The *Barker* Court identified three of these interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.*; *see also Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008). The third factor is the "most serious" because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Unless the first three factors weigh "heavily" in the defendant's favor, the defendant bears the burden to demonstrate actual prejudice. *See U.S. v. Molina-Solorio*, 577 F.3d 300, 307 (5th Cir. 2009); *U.S. v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009).

In considering this factor, the Mississippi Court of Appeals first clarified that Berryman did not argue that he was prejudiced based on oppressive pretrial incarceration or anxiety, nor could he, because he was already in custody due to a parole violation. *Berryman*, 337 So. 3d at

1130. Consequently, the only issue for the state appellate court to consider was whether Berryman had proven that the delay(s) prejudiced his defense. *Id.*

The Court finds it important to make this distinction clearly: the trial court found Berryman had demonstrated actual prejudice as to Count One, shooting into a dwelling, and dismissed that charge, but found Berryman had not established actual prejudice as to Count Two, felon in possession of a firearm. Thus, on direct appeal, and subsequent post-conviction proceedings, the relevant inquiry was whether Berryman proved actual prejudice as to the possession of a firearm charge.

Berryman's claim of prejudice hinged on the death of an alleged potential defense witness, Marshall Edge, who "could have provided helpful testimony in support of his defense of necessity." *Id.* The state appellate court accurately explained Berryman's argument as follows:

> . . . Berryman claimed that he took the rifle from Thacker and maintained possession of it only to prevent Thacker from killing him, and the jury was instructed on Berryman's defense of necessity. Berryman argues that Edge would have supported his defense because, according to Berryman, Edge was sitting on his porch when Berryman walked back to the Thacker/Alexander trailer, and Edge could have testified that Berryman was not carrying a rifle at that time.

*Id.* The state appellate court then noted that Berryman "failed to produce any corroborating evidence" as to the potential testimony and, instead, "offered only unsubstantiated assertions regarding Edge's possible testimony" with "no concrete proof" that Edge could have provided exculpatory testimony on the firearm possession charge. *Id.* at 1130-1131.

The Mississippi Court of Appeals then reasoned that "the exculpatory inference that Berryman would have us draw from the testimony that Edge allegedly could have given was directly contradicted by Berryman's own signed statement" in which Berryman admitted that he "grabbed [his] .22 rifle and [his] .380 pistol and drove over to [Thacker's] trailer." *Id.* at 1131.

16

As such, the state appellate court concluded that Berryman had not shown that he "was prejudiced by the absence of Edge's testimony that he saw Berryman without a rifle at another point in the night." *Id.* Thus, the state appellate court agreed with the trial court's finding that Berryman "was not actually prejudiced in his defense of the felon-in-possession charge." *Id.*

Weighing of the *Barker* factors

The Mississippi Court of Appeals correctly expounded that, in weighing the *Barker* factors, they must consider the "totality of the circumstances" such that "no one factor is dispositive." *Id.*; *see Houser v. State of Mississippi*, 2014 WL 555349 *5 (N.D. Miss. Feb. 12, 2014) (noting that the *Barker* "factors must be considered together, and no single factor is determinative"). The state appellate court then set forth the following summary of the factors and the weights it assigned to each under the facts of this case:

> Here, the overall length of the delay from arrest to trial is presumptively prejudicial. With respect to the second factor, the investigative delay of approximately seven months is considered neutral or weighs slightly against the State, the post-indictment delay of approximately fourteen months weighs heavily against the State, and the post-arraignment delay of approximately nineteen months occurred for various reasons that are considered neutral. We do not believe that any material delay can be attributed to Berryman. Therefore, the reasons-for-the-delay factor weighs in favor of Berryman. In addition, Berryman clearly asserted his right to a speedy trial, so the third factor also weighs in favor of Berryman. However, the fourth factor weighs in favor of the State because Berryman did not meet his burden of proving actual prejudice.

*Id.* The state appellate court then concluded that the trial court's finding that the delay did not prejudice Berryman's defense as to the firearm possession charge was not clearly erroneous nor did the trial court err in finding no violation of Berryman's right to a speedy trial on that particular charge. *Id.* at 1132.

*Conclusion as to Ground One*

The circumstances of this case are fairly unusual in that the trial court found a speedy trial violation as to one count of an indictment rather than to the indictment as a whole. This

finding, however, makes sense when looking at the individual charges separately. Edge's potential testimony that Berryman did not have a rifle when walking to Thacker/Alexander residence does not support a defense to the firearm possession charge because, even if true, it has no bearing on whether Berryman possessed firearms. It is undisputed that law enforcement found firearms at Berryman's residence and that fact does not change simply because he allegedly did not take a firearm with him to his neighbor's house. But, if he truly did not have a firearm with him when we went to the Thacker/Alexander home, that fact could *possibly* have some relevance as to the act of shooting into a dwelling and whether there was a defense for that act.

The "determinative question" for this Court is "whether the state court unreasonably concluded that the balance of all four *Barker* factors in this case does not establish a violation of the speedy trial right" as to the firearm possession charge. *See Goodrum*, 547 F.3d at 265. To be sure, habeas relief must be denied as long as the Court "find[s] the ultimate decision to be objectively reasonable." *Id.* at 266. Having independently reviewed the record in light of all four *Barker* factors, the Court finds that the Mississippi Court of Appeals' conclusion was not contrary to, or an objectively unreasonable application of, federal law nor was it based on an unreasonable determination of the facts. Accordingly, the Court finds that habeas relief on Ground One is unwarranted.

Because the issue is rather unique, however, the Court believes a Certificate of Appealability should be granted as to this claim. Specifically, the certificate shall issue for consideration of whether a finding of a speedy trial violation requires dismissal of an indictment in whole or whether the *Barker* analysis may be conducted as to each charge separately, possibly resulting in a finding of a violation as to one charge, but not others.

*Review of State Appellate Court Proceedings-Ground Three*

In Ground Three, Berryman asserts a "14th Amendment-Due Process of Law and Equal Protection" claim. In support, Berryman argues generally that, under "federal and state case precedent, the trial court was bound to dismiss all the indictment and dismiss all charges." Berryman raised this claim to the Mississippi Supreme Court on post-conviction review, and as was the case with the claim in Ground One, found it to be barred by res judicata. *See* Doc. # 22-4.

Berryman references the United States Constitution, but fails to demonstrate how the state court's dismissal of one count of the indictment, rather than the indictment as a whole, denied him due process or equal protection of the laws. In fact, the Court finds Berryman's claim to be wholly conclusory and should be dismissed on that basis alone. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases))("We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.").

Berryman may have intended his arguments in Ground One to be incorporated to support this claim. While Berryman did not raise this particular claim on direct appeal, the Mississippi Court of Appeals did fully consider and reject Berryman's speedy trial claim, concluding that the "dismissal of specific charges is consistent with *Barker's* analysis and may be appropriate in some cases." *Berryman*, 337 So. 3d at 1134. The state appellate court reasoned as follows:

> Accepting the trial judge's finding that Berryman's defense had been impaired as to Count I only—and that the Barker factors tipped in Berryman's favor on Count I only—the judge was entirely correct to dismiss only that count of the indictment. Under the "ad hoc" "balancing process" mandated by Barker, there is no violation of the right to a speedy trial unless the Barker factors "considered together" weigh in favor of the defendant. [citation omitted]. If those factors weigh in favor of the State with respect to a particular charge, then the defendant's right to a speedy trial on that charge simply has not been violated. And if the case may proceed to trial on that charge without violating

the defendant's right to a speedy trial, then there is no legal basis for the court to grant the "unsatisfactory severe remedy" of dismissing the charge. [citation omitted].

*Id.* Berryman has failed to establish that the state appellate court's conclusion was "opposite to that reached by the Supreme Court on a question of law" or that the decision "resolves a case differently that the Supreme Court has on a set of materially indistinguishable facts." *Lucio v. Lumpkin,* 987 F.3d 451, 469 (5th Cir. 2021). In fact, it is well-established that "it is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the United States Supreme Court]." *Pierre v. Vannoy*, 891 F.3d 224, 228 (5th Cir. 2018) (citations omitted).

The Court has scoured case law and found no legal authority specific to the circumstances presented in this case nor has Berryman cited any such authority. As such, the Court finds that Berryman has failed to establish that the state appellate court's denial of this claim was contrary to, or an objectively unreasonable application of, federal law nor was it based on an unreasonable determination of the facts. The Court further reincorporates its review of Ground One into its review of Ground Three. In sum, the Court finds that Berryman is not entitled to habeas relief on Ground Three.

**Ground Two- Defective Indictment**

In Ground Two, Berryman contends that the indictment was defective because, he alleges, it failed to put him on notice that the State sought to impose a sentence of life without parole as a violent habitual offender under Mississippi Code § 99-19-83, and, instead, Berryman argues the indictment indicated a maximum sentence of ten years as a habitual offender under Mississippi Code § 99-19-81. In advancing this argument, Berryman relies solely on the fact that the indictment erroneously included language from Section 99-19-81.

The indictment read, in pertinent part, as follows:

> **BRIAN SCOTT BERRYMAN** is hereby charged under Mississippi Code Annotated, Section 99-19-83, 1972 as amended, to be sentenced to the maximum term of imprisonment as prescribed for such felony and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation . . .

Doc. 23-8, p. 10. The indictment further detailed Berryman's previous felony convictions for capital murder, burglary of a dwelling, armed robbery, and robbery, specifically noting that those convictions constituted "a crime of violence, as defined by Section 97-3-2." Doc. 23-8, p. 11.

On direct appeal, the Mississippi Court of Appeals flatly rejected Berryman's argument. *Berryman*, 337 So. 3d at 1135. As to Berryman's contention regarding the language from Section 99-19-81, the state appellate court pointed out that the indictment "specifically charged him under section 99-19-83" and did not mention Section 99-19-81 at all. *Id.* Moreover, the state appellate court explained that the language of the indictment required Berryman to have been "sentenced to *and served*" separate terms of one year or more on each prior conviction to be sentenced as a habitual offender, a requirement that was "irrelevant under section 99-19-81." *Id.* Further, as the state appellate court correctly noted, the indictment included language that Berryman "had been convicted of 'a crime of violence'" under state law, which Section 99-19-83 requires but, again, is "irrelevant under section 99-19-81." *Id.*

The Mississippi Court of Appeals held that the indictment "*expressly* charged Berryman under section 99-19-83 and alleged all necessary prerequisites for sentencing under that statute." *Id.* The state appellate court, thus, concluded that "the indictment was more than sufficient to put Berryman on notice that he would be sentenced under section 99-19-83." *Id.* at 1136.

Claims challenging the sufficiency of a state indictment are not matters for federal habeas relief unless the indictment is so defective that it deprives the state court of jurisdiction. *Branch v. Estelle*, 631 F.3d 1229, 1233 (5th Cir. 1980). Where the state courts have held an indictment sufficient under state law, a federal court need not address that issue. *McCay v. Collins*, 12 F.3d

66, 68 (5th Cir. 1994). In fact, when the sufficiency of a state indictment has been "squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case," the issue is foreclosed from federal habeas review. *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (citations omitted); *see also Evans v. Cain*, 577 F.3d 620, 624 (5th Cir. 2009).

As discussed above, the Mississippi Court of Appeals considered Berryman's indictment and his claims challenging the sufficiency of the indictment and found no basis to grant relief.[4] *Berryman*, 337 So. 3d at 1135-1136. This Court likewise finds no basis to disturb that ruling. In sum, the highest state courts to review the conviction have held that the indictment was sufficient. The Court, therefore, finds that Berryman is not entitled to federal habeas relief on Ground Two.

### Ground Four-Ineffective Assistance of Counsel

In Ground Four, Berryman argues that he was denied effective assistance of counsel during trial proceedings. According to Berryman, he was wholly denied counsel for three and a half years, "despite vigorous demand for appointment." Berryman further opines that counsel failed to adequately prepare for trial and failed to put forth an adequate defense during trial. Berryman presented this claim to the Mississippi Supreme Court during post-conviction proceedings, but the state appellate court rejected the claim, finding that it "lack[ed] an arguable basis and/or fail[ed] to make the requisite showing of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668 [] (1984)." Doc. # 22-4.

---

[4] Berryman raised the issue again in his petition for certiorari review before the Mississippi Supreme Court, but that petition was denied.

Claims for ineffective assistance of counsel are governed by the standard set forth in *Strickland*,[5] which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas relief: (1) demonstrate constitutionally deficient performance by counsel, and (2) actual prejudice as a result of such ineffective assistance. The "deficiency" prong requires a showing that counsel's performance fell below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88. A court's scrutiny must be highly deferential of counsel's performance, so as to "eliminate the distorting effects of hindsight." *Motley v. Collins*, 18 F.3d 1123, 1126 (5th Cir. 1994). Thus, courts review an attorney's decision based upon the facts and circumstances as they existed at the time. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1986). Moreover, there is a strong presumption that counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813 (5th Cir. 1986).

Under the "prejudice" prong, the petitioner must demonstrate, to a reasonable probability, that the result of the proceedings would have been different but for the alleged conduct, or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995); *see also Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). An error by counsel, even if professionally unreasonable, does not warrant habeas relief if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986). There is no constitutional entitlement to error-free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981).

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984).

On habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington*, 562 U.S. at 105 ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The standard for ineffective assistance of counsel claims is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009), requiring district courts to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 578 U.S. 113, 117 (2016).

*Alleged Absence of Counsel for Three and Half Years*

Berryman's first argument in support of a claim for ineffective assistance of counsel hinges on his contention that he was denied counsel for three and half years despite his "vigorous demand" for appointment. The underlying circumstances are bit unusual because when Berryman was arrested in February 2017, he was transferred to MDOC custody on an outstanding warrant for absconding from supervision, which resulted in MDOC revoking his parole. *See* Doc. # 22-1. Berryman was indicted on the relevant charges in September 2017, but his name was "negligently left on the arraignment list" because he was housed at MDOC (due to the parole violation) instead of local custody. *See* Doc. # 23-3, p. 107. As such, there *was* a period of time during which Berryman was without counsel—the period between arrest and arraignment. However, it is undisputed that Berryman was represented by counsel, attorney John

R. White, at his arraignment on November 21, 2018. *See* Doc. # 23-1, p. 54; *see also* Doc. # 23-9, p. 34.

On January 7, 2019, the trial court entered orders appointing Richard Bowen to represent all indigent defendants in Tishomingo County, which included Berryman, and additionally appointing Daniel Sparks to represent "all conflict or overflow indigent defendants" in the county. *See* Doc. # 23-9, pp. 110-111. But those orders were not filed in Berryman's case and Berryman was not advised of the appointment(s). Even so, Bowen was listed as Berryman's attorney on the dockets for the May 2019, September 2019, January 2020, and April 2020 terms. *See* Doc. # 23-9, pp. 50, 67, 79, 93. Bowen, however, realized he had a conflict in representing Berryman because he had previously prosecuted him for capital murder, so Daniel Sparks the conflict public defender, took over Berryman's representation. *See* Doc. # 23-9, p.119. Sparks' representation of Berryman came as early as June 12, 2019, when he moved for and was granted a continuance. *See* Doc. # 23-1, p. 104; *see also* Doc. # 23-2, pp. 136-137. Sparks continued his representation of Berryman until June 11, 2020, when the trial court entered an order appointing attorney Will Bristow to represent Berryman, and Bristow continued that representation through the conclusion of trial proceedings. *See* Doc. # 23-3, p. 75; Doc. # 23-5, p. 2.

Thus, despite Berryman's assertions to the contrary, he was not denied counsel for three and a half years. In fact, there were several instances during the trial court proceedings where he acknowledged representation by these attorneys. During his speedy trial hearing, Berryman noted that he had spoken with Mr. White, his attorney at the arraignment, and that arraignment was held in November 2018. Doc. # 23-5, pp. 25-26. Berryman additionally confirmed that he met with Mr. Sparks sometime in September 2019 when Sparks advised him that he had been assigned to his case. *Id.* at 28-29. And, after Mr. Bristow was appointed in Sparks' place,

Bristow vigorously represented his client, successfully arguing to have one count of Berryman's indictment dismissed on speedy trial grounds. *Id.* at 69-73, 88-90; *see also* Doc. # 23-3, pp. 105-110.

In sum, the Court finds Berryman's contention that he was without counsel for three and a half years to be an inaccurate representation of what transpired. While there was a short time that Berryman was without counsel, between arrest and arraignment, Berryman was represented at all pertinent times from arraignment through the conclusion of trial proceedings. Thus, despite Berryman's apparent dissatisfaction with trial counsel, he was represented and, consequently, the Court finds this argument without merit.

*Alleged Failure to Investigate or Question Witnesses*

Berryman next argues that trial counsel was ineffective in failing to investigate or call any witnesses at trial. According to Berryman, counsel "did not contact witnesses or call witnesses at the speedy trial hearing, or at trial, even though some witnesses were present at trial." Doc. # 15, p.6. Berryman, however, fails to demonstrate what information should have been discovered through investigation which was not discovered by counsel. Additionally, Berryman has not identified what witnesses counsel failed to contact and/or call nor has he provided proof of what testimony those witnesses would have provided.

The Court first notes that Berryman's arguments *contained in the instant federal habeas petition* in this regard are substantively nothing more than conclusory allegations and such conclusory statements are insufficient to warrant habeas relief. *See Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002). Out of an abundance of caution, however, the Court will consider Berryman's argument advanced in his motion for post-conviction collateral relief ("PCR motion") in state court.

In his PCR motion, Berryman alleged *generally* that trial counsel failed to test evidence, failed to request a chain of custody report, failed to investigate the crime scene, and failed to question the police as to the whereabouts of the .380 cal. pistol. Doc. # 23-13-, pp.27-28. Berryman additionally *seemingly* identified two potential witnesses—Mrs. Nancy Brooks and Mr. Clinton "Buddy" Holley. *Id.* at 28.

Even considering these arguments in Berryman's PCR motion, the Court finds them to be largely conclusory with no substantive support. Berryman fails to explain how these alleged investigative failures (to test evidence, obtain a chain of custody report, view the crime scene, or question the police as to the .380 cal. pistol) constituted deficient performance nor that they prejudiced the outcome of the proceedings. Berryman has not established what the hypothetical investigation would have revealed and how (if at all) it would have altered the outcome of the trial. *See United States v. Lewis*, 786 F.2d 1278 (5th Cir. 1986); *Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982).

As to the potential witnesses, an attorney's decision to call or not call a particular witness falls within trial strategy and such decisions are afforded great deference. *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002). In fact, "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. *Sayre v. Anderson*, 238 F.3d 631,635-36 (5th Cir. 2001) (citations omitted). To warrant relief, Berryman must "demonstrate that the witness was available to testify and would have done so, set out the content of the witnesses' proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Berryman wholly fails to satisfy this burden. The Court, therefore, finds these arguments unavailing.

*Alleged Failure to Meet with Client and Put on a Defense*

Berryman further argues that trial counsel failed to meet with him before trial to discuss trial strategy and failed to present an adequate defense on his behalf. Berryman's arguments in this respect are, again, conclusory as he completely fails to articulate what strategy counsel failed to formulate or present nor how additional meetings would have altered the strategy employed. Even assuming his arguments were not conclusory in nature, they would still fail. Despite his assertions to the contrary, counsel did meet with Berryman in preparing for pretrial motions and trial. *See* Doc. # 23-5, p. 115. Though Berryman clearly believes that counsel's meetings with him were too infrequent and too brief, "the brevity of time spent in consultation, without more, does not establish that counsel was ineffective." *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980)(citations omitted).

"Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Richter*, 562 U.S. at 109 (citations omitted). Further, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Id.* at 109. "[T]hat a defense strategy did not work out as well as counsel had hoped" does not mean that "counsel was incompetent." *Id.* The Court notes that Berryman initially confessed to the crime at issue and officers recovered the firearms during their search of Berryman's home. The record establishes that trial counsel presented a vigorous defense on Berryman's behalf: (1) trying to show that Berryman's confession was involuntary, (2) arguing that the search yielding the weapons was invalid, (3) diligently cross-examining witnesses, and (4) calling Berryman to testify as to his version of the underlying events. *See* Doc. # 23-6, pp. 27-151(generally); Doc. #23-7 (generally). Thus, trial counsel clearly prepared and formulated a strategic defense for

Berryman. The mere fact that trial counsel's strategy did not prevail does not constitute deficient performance.

*Alleged Failure to Raise Constitutional Rights Violations*

Lastly, Berryman contends that trial counsel failed to argue the "numerous constitutional right violations that barred prosecution." As with many of his claims, Berryman presents this argument in conclusory fashion. Berryman fails to identify which alleged constitutional violations counsel failed to present to the trial court. As such, Berryman's claim in this regard fails to warrant habeas relief. *See Collier*, 300 F.3d at 587 (internal citations omitted). Moreover, contrary to Berryman's assertions, trial counsel *did* present constitutional arguments to the trial court. In fact, trial counsel succeeded in getting Count One of the indictment dismissed based on speedy trial grounds. *See* Doc. # 23-3, pp. 105-110; *see also* Doc. # 23-5, pp. 70-105. Trial counsel also moved for suppression of evidence on Fourth Amendment grounds, though that motion was denied. *See* Doc. # 23-3, pp. 111-113; *see also* Doc. # 23-5, pp. 105-112. In sum, the Court finds that, even in conclusory form, Berryman's arguments in this regard are contradicted by the record and without merit.

Upon careful consideration of each of Berryman's arguments for ineffective assistance of counsel, the Court finds the claim is without merit as Berryman has failed to show deficient performance by trial counsel. Even had he shown deficient performance by his attorney(s), Berryman has likewise failed to demonstrate that he was prejudiced in any way by his counsel's alleged actions and/or inactions. As such, the Court finds that Berryman is not entitled to federal habeas relief on Ground Four.

**Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2254 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability ("COA") upon the entry of a final order adverse to the petitioner, and Berryman must obtain a COA before appealing this Court's decision denying federal habeas relief. *See* 28 U.S.C. § 2253(c)(1). This Court may only grant a COA if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA for claims rejected on their merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" in order for a COA to issue. *Id.* Applying this standard, the Court concludes that a COA should be granted as to Berryman's claim in Ground One: whether a finding of speedy trial violation requires dismissal of an indictment in whole or whether the *Barker* analysis my be conducted as to each charge separately, possibly resulting in a finding of a violation as to one charge, but not others. The Court, however, finds that a COA should be denied in all other respects.

**Conclusion**

Based on the foregoing discussion, the Court finds that Berryman has failed to demonstrate that the State court adjudication of his claims resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, nor that the decision was based on an unreasonable determination of facts in light of the evidence

presented. Accordingly, habeas relief is **DENIED**, and Berryman's petition is hereby

**DISMISSED WITH PREJUDICE**. The Court further **GRANTS** a Certificate of Appealability

as to Ground One: whether a finding of a speedy trial violation requires dismissal of an

indictment in whole or whether the *Barker* analysis may be conducted as to each charge

separately, possibly resulting in a finding of a violation as to one charge, but not others. The

Court **DENIES** a certificate of appealability as to all other claims. A separate judgment in

accordance with this opinion and order will enter this day.

      **SO ORDERED**, this the 29th day of November, 2023.


               /s/ Sharion Aycock
               **UNITED STATES DISTRICT JUDGE**